1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    SUPERWOOD CO. LTD.,                    CASE NO. C12-1109JLR

11                     Plaintiff,            ORDER ON CROSS MOTIONS
                                             FOR SUMMARY JUDGMENT
12              v.

13    SLAM BRANDS, INC., et al.,

14                     Defendants.

15       Before the court are cross-motions for summary judgment brought by Plaintiff

16   Superwood Co. Ltd and Defendant Slam Brands, Inc.  (Superwood MSJ (Dkt. # 73);

17   Slam Brands MSJ (Dkt. # 76).)  The motions raise a long list of discrete issues that the

18   parties raise in an effort to narrow the claims that will be disputed at trial.  Having

19   reviewed the submissions of the parties, the relevant law, and the record, and considering

20

21

22

1   itself fully advised,[1] the court rules on each issue raised by the parties, GRANTING the

2   motions in part and DENYING them in part as explained below.

3                      **I.   BACKGROUND**

4        This is a breach of contract case.  Plaintiff Superwood is a furniture manufacturer

5   based in China.  (Compl. (Dkt. # 1) at 1.)  Defendant Slam Brands is a Washington

6   company that designs furniture, contracts with third parties to manufacture that furniture,

7   and distributes the completed furniture to retailers such as Costco, Target, and Wal-Mart.

8   (Lemelson Decl. (Dkt. # 77) ¶¶ 1, 4, 8.)  Slam Brands is the brain child of Defendant

9   Jason Lemelson—its founder, president, and sole shareholder.  (*Id.* ¶ 1.)

10        In 2009, Superwood and Slam Brands entered into a contract for Superwood to

11   manufacture furniture for Slam Brands.  Superwood agreed to manufacture products

12   called the "Pomeroy" TV stand, the "DeVore" desk, the "DeVore" bookcase, and the

13   "DeVore" file cabinet.  (*Id.* ¶ 25.)  Slam Brands had been awarded a "national rollout" to

14   sell these products in Costco stores.  (*Id.* ¶¶ 31-34.)  The contract between Superwood

15   and Slam Brands, called a Master Purchasing Agreement ("MPA") stated among other

16   things that the products needed to be delivered in a timely manner and that "each product

17

18       [1] Both parties have requested oral argument, but the court denies these requests.  Oral
19   argument is not necessary where the non-moving party would suffer no prejudice.  *Houston v. Bryan*, 725 F.2d 516, 517-18 (9th Cir. 1984).  "When a party has [had] an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice [in
20   refusing to grant oral argument]."  *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (quoting *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir.
21   1991)) (alterations in *Partridge* ).  "In other words, a district court can decide the issue without oral argument if the parties can submit their papers to the court."  *Id.*  Here, the issues have been
22   thoroughly briefed by the parties and oral argument would not be of assistance to the court. Accordingly, the court will not hold oral argument.

1  shall be delivered with an agreed upon quality level." (*Id.* ¶ 19.)  Superwood and Slam

2  Brands conducted a cooperative pre-production process to agree on a quality level, after

3  which Superwood began manufacturing the furniture and Slam Brands began distributing

4  the furniture to Costco for sale to consumers.  (*Id.* ¶¶ 26-37.)

5       At that point, things started to go wrong.  Slam Brands alleges that Superwood

6  started producing furniture that fell below the agreed-upon standard of quality.  For

7  example, Slam Brands alleges that Superwood used a "3-ply construction" rather than the

8  agreed-upon "5-ply surface" (*id.* ¶ 41) and that nails heads were visible on the surface of

9  the furniture (*id.* ¶ 47).  At Costco, customers started to complain as pieces of the

10  furniture started "pulling off" and additional quality issues began to arise.  (*Id.* ¶ 51-53.)

11  For example, Costco made comments such as:

12  • "[T]he nail heads are sticking out all over the top of the display."

13  • "These are awful."

14  •  "Another case of protruding nails."

15  • "I am thinking that we may have a quality issue on our hands if this is the type of

16    quality that this factory (Super Wood?) sold to us."

17  • "This looks really bad."

18   (*Id.* ¶¶ 57-58, 61, 71-72.)  Before long, Costco informed Slam Brands that it was

19  considering a recall of its products.  (*Id.* ¶ 52.)  Slam Brands, in turn, informed

20  Superwood of these issues.  (*Id.* ¶ 55.)

21       Meanwhile, Superwood was not happy with Slam Brands either.  Slam Brands was

22  not paying its bills.  Superwood alleges that Slam Brands agreed to pay $8,266,558.93 for

1   the furniture within 30 days of delivery, but that Slam Brands paid only $5,000,000.00,

2   leaving a balance due in the amount of $2,666,558.93.  (*Id.*)  Superwood demanded

3   payment from Slam Brands, but Slam Brands would not pay.  (*See* Lemelson Decl. ¶ 56.)

4   While all of this was going on, Slam Brands sold all of its assets to a competitor,

5   Whalen Manufacturing, for $5.5 million.  (*Id.* ¶ 105.)  As part of the sale, Mr. Lemelson

6   agreed to work for Whalen and sign a Covenant not to Compete.  (*Id.* ¶ 7.)  After the sale,

7   Slam Brands ceased doing business.  (Compl. ¶ 3.6.)

8   Superwood brought this lawsuit to recover the balance due on the contract,

9   alleging claims for breach of contract, unjust enrichment, violation of Washington's

10  Consumer Protection Act, violation of the Uniform Fraudulent Transfers Act, and

11  personal liability against Mr. Lemelson.  (Compl. ¶¶ 4.1-8.2.)  Slam Brands responded in

12  kind, bringing counterclaims for breach of contract, breach of the duty of good faith and

13  fair dealing, breach of express and implied warranties, unjust enrichment, negligence,

14  negligent misrepresentation, fraud, business disparagement, and tortious interference.

15  (Ans. (Dkt. # 48) ¶¶ 4.1-4.40.)  Following discovery, each party filed a motion for

16  summary judgment.

17              **II.   ANALYSIS**

18  **A.   Summary Judgment Standard**

19  Summary judgment is appropriate if the evidence, when viewed in the light most

20  favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

21  any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

22  P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*,

477 F.3d 652, 658 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of

the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is

"genuine" if the evidence is such that reasonable persons could disagree about whether

the facts claimed by the moving party are true.  *Aydin Corp. v. Loral Corp.*, 718 F.2d

897, 902 (9th Cir. 1983).

> [T]he issue of material fact required . . . to be present to entitle a party to
> proceed to trial is not required to be resolved conclusively in favor of the
> party asserting its existence; rather, all that is required is that sufficient
> evidence supporting the claimed factual dispute be shown to require a jury
> or judge to resolve the parties' differing versions of the truth at trial.

*First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).

The court is "required to view the facts and draw reasonable inferences in the light

most favorable to the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The court may not weigh evidence or make credibility determinations in analyzing a

motion for summary judgment because these are "jury functions, not those of a judge."

*Liberty Lobby*, 477 U.S. at 249-50.

The moving party bears the initial burden of showing there is no genuine issue of

material fact and that he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S.

at 323.  If the moving party meets his or her burden, the non-moving party "must make a

showing sufficient to establish a genuine dispute of material fact regarding the existence

of the essential elements of his case that he must prove at trial."  *Galen*, 477 F.3d at 658.

**B.  Superwood's Motion**

As stated above, the parties' motions present numerous discrete issues, each of

which must be ruled on separately and on its own merits.  However, several themes

1    permeate the parties' submissions.  First, the parties have dramatically different

2    interpretations of the facts, both of which are susceptible to determination by a fact

3    finder, and neither of which is manifestly unreasonable.  This makes summary judgment

4    inappropriate on most of the parties' claims.  Second, Superwood's briefing on these

5    motions often does not articulate Superwood's arguments in a coherent manner, making

6    it very difficult for the court to discern those arguments and properly rule on them.  With

7    this said, the court turns first to Superwood's motion.

8        1. <u>Contractual Offsets—Failure to Timely Notify of Breach or Reject Non-
           Conforming Goods</u>

9    First, Superwood moves for summary judgment dismissal of Slam Brands'

10   contractual offset claims.  (Superwood MSJ at 14-18.)  Slam Brands claims that it is

11   entitled to contractual offsets arising from Superwood's failure to produce products of

12   sufficient quality and failure to timely ship.  (Slam Brands MSJ at 14-16.)  According to

13   Slam Brands, the parties agreed ahead of time to allocate damages related to unforeseen

14   complications in a certain manner.  (*See id.*)  In response, Superwood argues that Slam

15   Brands did not comply with its duties under the Uniform Commercial Code ("UCC") and

16   therefore is not entitled to contractual offsets.  (Superwood MSJ at 14-18.)

17       The parties agree that the UCC governs this transaction.  (*Id.* at 15; Slam Brands

18   Resp. (Dkt. # 79) at 6-7.)  Under the UCC, if a seller of goods produces non-conforming

19   goods, an unsatisfied buyer may either "reject" the goods, RCW 62A.2-602, accept the

20   goods and later "revoke" acceptance, RCW 62A.2-606, 608, or simply pay the contract

21   price and seek damages against the seller, RCW 62A.2-607(2) (Acceptance of goods does

22

1  not "impair any other remedy provided by this Article for non-conformity.").  The UCC

2  allows the buyer to recover damages for "the loss resulting in the ordinary course of

3  events from the seller's breach as determined in any manner which is reasonable."  RCW

4  62A.2-714.

5         Here, there is no dispute that Slam Brands accepted the goods and never attempted

6  to revoke them.  (Slam Brands MSJ at 7.)  Thus, to the extent Superwood makes

7  arguments related to rejection or revocation of acceptance, those arguments are

8  misplaced.

9         Principally, Superwood argues that Slam Brands did not timely notify Superwood

10 that its goods breached the parties' contract.  Under the UCC, "the buyer must within a

11 reasonable time after he discovers or should have discovered any breach notify the seller

12 of breach or be barred from any remedy."  RCW 62A.2-607(3)(a).  "The content of the

13 notification need merely be sufficient to let the seller know that the transaction is still

14 troublesome and must be watched. . . . The notification . . . need only be such as informs

15 the seller that the transaction is claimed to involve a breach, and thus opens the way for

16 normal settlement through negotiation."  Official cmt. 4, RCW 62A.2-607.  Superwood

17 argues that "[t]he record is devoid of any notice having been given to Superwood by

18 Slam Brands until the offset claims were first asserted in the counterclaim . . . ."

19 (Superwood MSJ at 3.)

20        Superwood is wrong.  The record is replete with evidence that Slam Brands

21 notified Superwood of its quality issues at every step of the way.  The record shows

22 numerous instances at the time of the dispute in which Slam Brands discussed quality

1   problems with Superwood and talked about how to fix them.  (Lemelson Decl. ¶¶ 44, 55-

2   56, 65, 68, Ex. H at 37-38, Ex. G, Ex. N at SB 67, 80.)  There can be no doubt that the

3   content of the notifications was sufficient to notify Superwood that the transaction was

4   troublesome (*see, e.g.*, *id.* Ex. G at 34 ("THIS IS A MAJOR ISSUE THAT NEEDS

5   URGENT ATTENTION")) and to open the way to normal settlement through

6   negotiation.  *See* Official cmt. 4, RCW 62A.2-607.  Superwood's arguments to the

7   contrary are borderline frivolous, and the court rejects them.  Superwood's motion for

8   summary judgment on this issue is DENIED.

9        2.  <u>Foreseeable Damages</u>

10        Second, Superwood moves for summary judgment dismissal of Slam Brands'

11   counterclaims, arguing that Slam Brands is precluded from recovering damages for loss

12   of value as a going concern because those damages were not foreseeable.  (Superwood

13   MSJ at 18-19.)  Slam Brands has asserted numerous counterclaims against Superwood,

14   essentially alleging that Superwood destroyed the value of Slam Brands' business by

15   providing low quality goods that ruined Slam Brands' business relationship with Costco.

16   (*See generally* Ans.)  Superwood's argument is difficult to discern from its briefing, and

17   it is not clear that Superwood makes any coherent argument at all.  (*See* Superwood MSJ

18   at 18-19.)  As best the court can tell, Superwood argues that Slam Brands' claimed

19   damages were not foreseeable because Superwood did not foresee them.  (*See id.*)

20        The court rejects Superwood's argument.  The argument is based on RCW 62A.2-

21   715, under which "[c]onsequential damages resulting from the seller's breach include (a)

22   any loss resulting from general or particular requirements and needs of which the seller at

1    the time of contracting had reason to know . . ." and "(b) injury to person or property

2    proximately resulting from any breach of warranty." RCW 62A.2-715.  Superwood

3    argues that this is equivalent to a foreseeability requirement.  The court doubts this

4    assertion.[2]  That said, in Washington there is a foreseeability requirement governing

5    contract damages generally.  *Gaglidari v. Denny's Restaurants, Inc.*, 815 P.2d 1362,

6    1373 (Wash. 1991).  Specifically, for a breach of contract claim, a plaintiff may recover

7    damages which "may fairly and reasonably be considered either arising naturally, i.e.,

8    according to the usual course of things, from such breach of contract itself, or such as

9    may reasonably be supposed to have been in the contemplation of both parties, at the time

10   they made the contract, as the probable result of the breach of it." *Id.* (citing *Hadley v.*

11   *Baxendale*, 9 Ex. 341, 354, 156 Eng. Rep. 145, 151 (1854)).  The question of

12   foreseeability is analogous to the question of proximate cause in torts and is emphatically

13   a question of fact for the jury.  *Civic Ctr. Drive Apartments Ltd. P'Ship v. Sw. Bell Video*

14   *Servs.*, 295 F. Supp. 2d 1091, 1107 (N.D. Cal. 2003).

15        Superwood has not come anywhere close to meeting its initial burden of

16   production to establish that there is no genuine dispute of material fact on this issue.

17   *Celotex*, 477 U.S. at 323.  The court rejects Superwood's meager effort to meet its

18   burden.  Superwood argues that Slam Brands' loss-of-value damages were not

19   foreseeable because Superwood had no way of knowing that Slam Brands was planning

20

21   _____

     [2] The language of the statute does not support Superwood's argument.  The "of which the
22   seller . . . had reason to know" language appears to modify not "any loss," as Superwood's
     argument implies, but "general or particular requirements and needs." *See* RCW 62A.2-715.

1  to sell its assets to Whalen.  (Superwood MSJ at 18-19.)  This argument confuses Slam

2  Brands' claim of damages with the evidence Slam Brands presents to prove those

3  damages.  Slam Brands indicates in its interrogatory responses that it calculated damages

4  with reference to the sale price Whalen was willing to pay at two relevant times.  (*See*

5  Superwood MSJ at 18-19.)  This does not change the fact that the damages themselves

6  are the loss of value of Slam Brands as a going concern.  Slam Brands need only prove

7  that its damages meet the standard articulated above, not that Superwood should have

8  known what evidence Slam Brands would present to prove damages at trial.

9  Superwood's motion for summary judgment on this issue is DENIED.

10       3.  Independent Duty Doctrine

11       Third, Superwood moves for summary judgment dismissal of all of Slam Brands'

12  counterclaims.  (Superwood MSJ at 20-21.)  Superwood argues in extremely cursory

13  fashion, with no analysis whatsoever and only a handful of citations, that all of Slam

14  Brands' counterclaims are barred by Washington's independent duty doctrine.  (*See id.*)

15  Slam Brands responds by arguing that the independent duty doctrine does not apply to

16  this case or bar any of its counterclaims.

17       The independent duty doctrine is "an analytical tool used by the court to maintain

18  the boundary between torts and contract."  *Elcon Const., Inc. v. Eastern Wash. Univ.*, 273

19  P.3d 965, 969 (Wash. 2012).  The doctrine bars tort claims related to a contract that do

20  not arise from a tort duty existing independently of the terms of the contract.  *Id.*  The

21  independent duty doctrine applies where "considerations of common sense, justice,

22  policy, and precedent in a particular set of circumstances [lead] . . . to the legal

1   conclusion that the defendant did not owe a duty." *Eastwood v. Horse Harbor Found.,*

2   *Inc.*, 241 P.3d 1256, 1262 (Wash. 2010).

3       The independent duty doctrine does not bar Slam Brands' counterclaims.  First,

4   three of Slam Brands' claims are contract claims, not tort claims, so the doctrine simply

5   does not apply to them.  (*See* 1st Am. Ans. ¶¶ 4.1-4.13.)  Second, Slam Brands has

6   withdrawn its claims for unjust enrichment, negligence, business disparagement, and

7   tortious interference, leaving only two claims to be analyzed under the independent duty

8   doctrine:  negligent misrepresentation and fraud.  (Slam Brands Resp. at 5 n.3; *see id.*

9   ¶¶ 4.1-4.40; Superwood Reply (Dkt. # 86) at 7.)  The Washington Supreme court has

10  already said that the independent duty doctrine does not, as a general matter, bar claims

11  for negligent misrepresentation, *Eastwood*, 241 P.3d at 1261, or for fraud, *Elcon*, 273

12  P.3d at 970.  In this case, there is no reason grounded in "common sense, justice, policy,

13  and precedent" to depart from the Washington Supreme Court's prior analyses of these

14  claims in other contexts.  *Id.* at 1262.  The court concludes that in this case, just like in

15  the cases cited above, there is an independent duty not to engage in fraud or negligently

16  misrepresent facts that exists separately from the terms of the contract.  Accordingly, the

17  independent duty doctrine does not bar any of Slam Brands' counterclaims, and the court

18  DENIES summary judgment on this issue.

19       4.  <u>Superwood's Breach of Contract Claim</u>

20       Fourth, Superwood moves for partial summary judgment on its breach of contract

21  claim.  (Superwood MSJ at 13.)  Superwood argues that it is entitled to summary

22  judgment because Slam Brands has admitted that it never paid Superwood the amount it

ORDER- 11

1    agreed to pay under the contract.  (*Id.*)  This is partially true.  Slam Brands does admit

2    that it never paid Superwood the full price of the contract.  (Lemelson Decl. ¶ 82.)

3    However, Slam Brands argues that it has fulfilled its duty under the contract because

4    Superwood now owes Slam Brands more than Slam Brands owes Superwood.  (*See*

5    *generally Ans.*)

6          Superwood's briefing has made it difficult for the court to rule on this motion.

7    Superwood devotes astonishingly little briefing space to this issue and never explains

8    what relief it is requesting, what "partial" summary judgment it would have the court

9    enter, or what legal standards apply that allow the court to enter summary judgment.  (*See*

10   Superwood MSJ at 1, 13; Superwood Reply at 7-8.)  Thus, the court acknowledges that

11   there is no dispute regarding whether Slam Brands paid Superwood the full amount it was

12   invoiced.[3]  To the extent Superwood's motion requests acknowledgement of that fact, the

13   motion is granted.  However, Superwood has made no showing whatsoever that it is

14   entitled to any more than this as a matter of law and Slam Brands has demonstrated that it

15   raises genuine and material factual disputes with respect to this claim, so the court

16   DENIES Superwood's motion as both factually unsupported and legally insufficient.

17   *Cordon v. Wachovia Mortgage*, 776 F. Supp. 2d 1029, 1040 (N.D. Cal. 2011) (rejecting

18   defendant's argument because it failed to provide legal analysis or cite to relevant

19   decisional authority); *Independent Towers of Wash. v. Washington*, 350 F.3d 925, 929

20

21          [3] There is, however, dispute about the size of the shortfall.  (*See* Slam Brands Resp. (Dkt.
22   # 79) at 19 n.23.)  This provides a separate, independent reason why summary judgment is not
     appropriate.

1  (9th Cir. 2003) (holding that courts cannot manufacture arguments for parties and should

2  not consider claims not fully argued); *United States v. Dunkel*, 927 F.2d 955, 956 (7th

3  Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")

4      5.  Slam Brands' Fraud Claim

5      Last, Superwood moves for summary judgment on Slam Brands' fraud

6  counterclaim.[4]  (Superwood MSJ at 21-22.)  Slam Brands has advanced a claim of fraud

7  against Superwood, alleging that Superwood "made representations of fact to Slam

8  Brands regarding its ability to produce the quantity of goods required within the specified

9  timeframe with the requisite degree of quality," that these representations were false, and

10 that Superwood knew they were false.  (Ans. ¶¶ 4.26-30.)  Superwood argues that

11 Plaintiffs have not alleged fraud in their complaint with particularity.

12     Superwood's argument on this issue consists of four sentences that appear to

13 challenge the adequacy of the pleadings under Rule 9(b).  Superwood does not even

14 present an argument that it is entitled to summary judgment on this claim.  Nor could it—

15 there are heavily disputed issues of fact with respect to all of the elements of fraud.  The

16 court concludes that, treating this as a summary judgment motion, Superwood has not

17 come close to meeting its initial burden of production to establish the absence of a

18 genuine dispute of material fact.  *Celotex*, 477 U.S. at 323.

19

20 _____

21  [4] Superwood also argues that the court should grant summary judgment on Slam Brands'
   claims for business disparagement and tortious interference.  (Superwood MSJ at 22-23.)  These
   arguments are moot because Slam Brands has withdrawn these claims.  (Slam Brands Resp. at 5
22 n.3.)

ORDER- 13

1    Further, the court declines to construe this as a motion attacking the adequacy of

2    the pleadings under Federal Rule of Civil Procedure 12(b)(6).  Superwood has not asked

3    the court to treat this as a Rule 12(b)(6) motion—it simply challenges the adequacy of the

4    pleadings as if that were the appropriate subject of a summary judgment motion.  At this

5    stage of the case, the court will not liberally construe Superwood's motion in this way

6    because to do so would be unfair and would substantially prejudice Slam Brands.

7    Superwood's motion for summary judgment on this issue is DENIED.

8    **C.    Slam Brands' Motion**

9        Having dealt with all issues raised in Superwood's motion, the court now turns to

10   Slam Brands' motion.

11       1.  Contractual Offsets

12       First, Slam Brands moves for summary judgment on its contractual offset claims.

13   (Slam Brands MSJ at 14-16.)  Slam Brands claims that it is entitled to offset any damages

14   awarded to Superwood by an amount dictated by the chargeback provisions contained in

15   the MPA.  (*Id.*)  Slam Brands argues that there are no genuine issues of material fact

16   regarding this question and that the court can interpret the MPA as a matter of law.  (*Id.*

17   at 15.)  In response, Superwood attacks the evidence Slam Brands relies on in its motion,

18   moves to strike that evidence, then argues that Slam Brands has not produced enough

19   evidence to meet its burden of production.  (Superwood Resp. (Dkt. # 81) at 7-12.)  In

20   addition, Superwood argues that Slam Brands waived any right it may have had to late

21   shipment penalties.  (*Id.* at 12-13.)

22

ORDER- 14

1    As an initial matter, the court points out that the Federal Rules of Evidence do not

2 strictly govern the use of evidence at the summary judgment stage.  Rather, the question

3 at the summary judgment stage is whether the submissions of the parties create a genuine

4 dispute of material fact for the jury to decide.  Fed. R. Civ. P. 56(a).  Under Rule 56,

5 evidence need not be admissible to support a summary judgment motion; parties must

6 only demonstrate that the evidence can be "presented in a form that would be admissible

7 in evidence."  Fed. R. Civ. P. 56(c)(2).  For example, many declarations and affidavits

8 that would be inadmissible at trial under the hearsay rule are properly considered at the

9 summary judgment stage because they can be presented at trial in the form of witness

10 testimony.  Fed R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or

11 oppose a motion must be made on personal knowledge, set out facts that would be

12 admissible in evidence, and show that the affiant or declarant is competent to testify on

13 the matters stated.").  Thus, in ruling on this motion to strike, the court does not apply the

14 evidence rules in precisely the same way it would when ruling on an evidentiary

15 objection at trial.

16    With this in mind, the court DENIES Superwood's motion to strike.  Superwood

17 argues that the court should strike parts of Mr. Lemelson's declaration and certain

18 attachments thereto because they are unauthenticated, speculative, and constitute

19 inadmissible hearsay.  (Superwood Resp. at 11-12.)  Superwood objects to Mr.

20 Lemelson's use of Costco sale and return reports to calculate the number of Slam Brands'

21 products that purchasers returned to Costco.  (*Id.*)  Superwood argues that Slam Brands

22 should have used a different method for calculating the number of returns—one that

1    accounts for each individual item returned.  (*Id.*)  The court has no doubt that the method

2    Superwood suggests would be a more reliable way of determining the number of returned

3    items.  However, Mr. Lemelson testifies in his deposition that the information required to

4    apply Superwood's method is simply not available.  (Lemelson Decl. ¶ 97.)  Instead, Mr.

5    Lemelson performed a mathematical calculation that takes into account the total sales and

6    returns and the total number of products sold to Costco to arrive at a number of returns.

7    (Lemelson Decl. ¶¶ 98-103.)  Superwood does not raise any legitimate objection to this

8    method other than to say that a different method would be better.  This does not make the

9    evidence speculative or unreliable.  Nor are there problems with authentication or the

10   hearsay rule:  as Slam Brands points out, the documents relied on appear to be business

11   records that are self authenticating, *see* Fed. R. Evid. 902(11), and fall under the business

12   records exception to the hearsay rule, *see* Fed. R. Evid. 803(6).  Thus, the court rejects

13   Superwood's argument that this evidence could not be presented in a form that would be

14   admissible in evidence at trial and DENIES Superwood's motion to strike.

15        Next, the court rejects Superwood's argument that Slam Brands waived its claim

16   for late shipment penalties.  Superwood has presented no coherent argument or analysis

17   on this issue, apparently believing that the court will make an argument for it.  But the

18   court cannot, and will not, do this.  *Independent Towers*, 350 F.3d at 929 (holding that

19   courts cannot manufacture arguments for parties and should not consider claims not fully

20   argued).  In any event, an implied waiver of contractual rights requires "unequivocal acts

21   or conduct evidencing an intent to waive" and "will not be inferred from doubtful or

22   ambiguous factors."  *Jones v. Best*, 950 P.2d 1, 6 (Wash. 1998).  Superwood asserts that

ORDER- 16

1   it did not have a chance to dispute the late shipment charges and that there was

2   insufficient notice of the charges.  (Superwood Resp. at 11-12.)  Even construing these

3   facts in the light most favorable to Superwood, no reasonable fact finder could conclude

4   that Slam Brands waived its right to collect late shipment charges.  *See First Nat. Bank of*

5   *Ariz.*, 391 U.S. at 288-89.  Accordingly, the court rejects this argument.

6          Beyond the two arguments rejected above, Superwood has not disputed any

7   material fact with respect to the offsets or done anything to show that Slam Brands is not

8   entitled to judgment as a matter of law.  Indeed, the terms of the MPA are clear regarding

9   the chargebacks and must be interpreted in the manner Slam Brands contends.  In

10  particular, there is nothing at all in the contract to support Superwood's assertion that the

11  reason an item was returned is somehow relevant to the return chargeback calculation.

12  And while Superwood attacks (unsuccessfully) the admissibility of Slam Brands'

13  evidence, it presents no evidence of its own to raise a genuine issue of material fact for

14  trial on this issue.  Accordingly, and Slam Brands having met its initial burden of

15  production, the court concludes that Superwood has not met its resulting burden to

16  demonstrate a genuine issue of material fact.  The court GRANTS Slam Brands' motion

17  for summary judgment that it is entitled to contractual offsets in the amount of

18  $552,569.04.

19          2.  Superwood's Unjust Enrichment Claim

20          Second, Slam Brands moves for summary judgment on Superwood's claim for

21  unjust enrichment against Superwood and Mr. Lemelson.  (Slam Brands MSJ at 16-17.)

22  Superwood alleges that "the defendants . . . have been unjustly enriched on account of

1   having sold assets of [Slam Brands] to Whalen and having unjustly received the proceeds

2   therefrom without payment to Superwood for the furniture products sold and delivered."

3   (Compl. ¶ 5.2.)  Slam Brands argues that this claim for unjust enrichment must fail

4   because an unjust enrichment claim cannot exist where a contract governs the

5   relationship between the parties.  (Slam Brands MSJ at 16-17.)

6          Unjust enrichment is a "method of recovery for the value of [a] benefit retained

7   absent any contractual relationship because notions of fairness and justice require it."

8   *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008).  To establish a claim for unjust

9   enrichment, a plaintiff must prove three elements:  (1) the defendant received a benefit,

10  (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it

11  unjust for the defendant to retain the benefit without payment.  *Id.*

12         Slam Brands believes there is an additional requirement that no contract exist

13  between the parties.  Slam Brands points to no case law that directly supports this

14  proposition, relying instead on inferences from language in cases that do not address this

15  exact issue.  (*See* Slam Brands MSJ at 16-17; Slam Brands Reply (Dkt. # 84) at 7-9.)  In

16  any event, the court need not decide this question of law here.  First, Superwood does not

17  contest dismissal of its unjust enrichment claim against Slam Brands.  (*See* Superwood

18  Resp. at 15.); *see also* Local Rules W.D. Wash. LCR 7(b)(2) (If a party fails to respond to

19  a motion or argument, it may be taken as an admission that the motion has merit.)

20  Second, and more importantly, Superwood does not state a claim for unjust enrichment

21  against Slam Brands under the formulation of unjust enrichment stated above.  This is

22  because Superwood presents no evidence that Slam Brands retained a benefit.  In fact,

1    Superwood argues, to the contrary, that Mr. Lemelson retained the benefit at issue here—

2    the value of the furniture that was not paid for.  (Superwood Resp. at 14-15.)  Indeed, the

3    crux of Superwood's claim is that Mr. Lemelson was unjustly enriched because he

4    received the value of the furniture Superwood shipped to Slam Brands.  (*See id.*)  The

5    court takes this claim at face value and concludes that Superwood does not have an unjust

6    enrichment claim against Slam Brands.

7            However, Superwood may have a claim against Mr. Lemelson.  Superwood has no

8    contract with Mr. Lemelson, so the court need not address Slam Brands' argument that

9    the existence of a contract precludes an unjust enrichment claim.  Further, Superwood has

10   provided sufficient evidence for a fact finder to conclude that (1) Mr. Lemelson received

11   a benefit in the amount of his cash payout from Slam Brands, (2) he did so at

12   Superwood's expense because he ended up with money that could have been used to pay

13   Superwood, and (3) the circumstances make it unjust for Mr. Lemelson to retain the

14   benefit without payment.  Accordingly, Slam Brands' motion is GRANTED with respect

15   to Slam Brands and DENIED with respect to Mr. Lemelson.

16           3.  Superwood's Consumer Protection Act Claim

17           Third, Slam Brands moves for summary judgment on Superwood's claim for

18   violation of Washington's Consumer Protection Act ("CPA").  (Slam Brands MSJ at 17-

19   22.)  Superwood alleges that "Lemelson deliberately engaged in a course of conduct to

20   enable [Slam Brands] to acquire furniture products from Superwood without intending to

21   pay the full cost thereof."  (Compl. ¶ 6.3.)  Slam Brands argues that Superwood has not

22   produced enough evidence to survive summary judgment on this claim.  (Slam Brands

ORDER- 19

1  MSJ at 17-21.)  The court GRANTS this motion and DISMISSES Superwood's CPA

2  claim.

3       To prove a violation of the CPA, a plaintiff must prove five elements:  (1) an

4  unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) affecting the

5  public interest; (4) injury to a person's business or property; and (5) causation.  *Columbia*

6  *Physical Therapy, Inc. v. Benton Franklin Orthopedic Assocs., P.L.L.C.*, 228 P.3d 1260,

7  1269 (Wash. 2010).

8       Superwood cannot prove the public interest element.  "When the transaction is a

9  private dispute, as it is here, and not a consumer transaction, it is difficult to show public

10  interest in the subject matter.  There must be a likelihood additional persons have been or

11  will be injured in the same fashion."  *Goodyear Tire & Rubber Co. v. Whiteman Tire,*

12  *Inc.*, 935 P.2d 628, 635 (Wash. Ct. App. 1997).  The Washington Supreme Court has set

13  forth four factors a fact finder may consider in determining whether a private dispute

14  sufficiently implicates the public interest so as to support a CPA claim:  (1) whether the

15  alleged acts were committed in the course of defendant's business; (2) whether the

16  defendant advertised to the public in general; (3) whether the defendant actively solicited

17  this particular plaintiff, indicating potential solicitation of others; and (4) whether the

18  plaintiff and defendant have unequal bargaining positions.  *Michael v. Mosquera-Lacy*,

19  200 P.3d 695, 700 (Wash. 2009).

20       Applying these four factors, the court concludes that Superwood has not made a

21  sufficient showing to survive summary judgment.  First, the alleged acts of deception

22  (acquiring furniture with no intention of paying) were committed in the course of Slam

ORDER- 20

1  Brands' business, favoring the public interest element.  However, there is no evidence

2  whatsoever suggesting that this represented a regular pattern of conduct in the course of

3  Slam Brands' business.  Rather, this is something that the evidence suggests happened

4  only once.  Thus, the public interest in preventing future instances of this conduct by

5  Slam Brands is not strongly implicated.  Second, Superwood has provided no evidence at

6  all that Slam Brands advertises to the public in the capacity in which Superwood claims it

7  is being deceptive.  This favors finding that the public interest element has not been met.

8  Third, Slam Brands solicited Superwood's business:  "Superwood was on a list of

9  potential vendors prepared by Slam Brands' Chinese office with whom I was scheduled

10  to meet and tour their factories."  (Lemelson Decl. ¶ 17.)  However, Superwood presents

11  no evidence that Slam Brands is likely to solicit others in this same capacity in the future,

12  nor that it engaged in the allegedly deceptive acts with respect to any other manufacturer.

13  As of now, Superwood is no longer a going concern.  Thus, this factor weighs against the

14  public interest element even though Slam Brands solicited Superwood.  Finally, there is

15  no evidence that Superwood and Slam Brands have anything but equal bargaining

16  positions.  Both are sophisticated business operations, and there is nothing whatsoever in

17  the record to suggest otherwise.  In light of these factors, the court concludes that

18  Superwood has not presented enough evidence to survive summary judgment on its CPA

19  claim.  Accordingly, the court DISMISSES this claim.

20         4.  <u>Superwood's Claim for Personal Liability Against Mr. Lemelson</u>

21         Fourth, Slam Brands moves for summary judgment on Superwood's claim that

22  Mr. Lemelson should be held personally liable for Slam Brands' obligations to

ORDER- 21

1   Superwood.  (Slam Brands MSJ at 22-23.)  Superwood alleges that Mr. Lemelson is the

2   alter ego of Slam Brands and that "adherence to the corporate form under these

3   circumstances would sanction fraud and promote injustice . . . ."  (Compl. ¶ 8.2.)  Slam

4   Brands argues that Superwood has presented no evidence that Mr. Lemelson is the alter

5   ego of Slam Brands.  (Slam Brands MSJ at 22-23.)  The court DENIES this motion.

6        Under Washington law, the "corporate veil" can be pierced only in limited

7   circumstances.  As a general matter, shareholders of a corporation are not liable for debts

8   incurred by the corporation.  *Meisel v. M&N Modern Hydraulic Press Co.*, 645 P.2d 689,

9   693 (Wash. 1982) ("The purpose of a corporation is to limit liability.")  However, a

10   shareholder must answer for a corporate liability if the corporate veil is pierced upon a

11   showing that either (1) the corporation has been intentionally used to violate or evade a

12   duty owed to another and disregard is necessary and required to prevent unjust loss to the

13   injured party; or (2) the corporate entity has been disregarded by the principals

14   themselves so that there is such a unity of ownership and interest that the separateness of

15   the corporation has ceased to exist.  *Id.* at 692; *Grayson v. Nordic Const. Co., Inc.*, 599

16   P.2d 1271, 1273-74 (Wash. 1979); *Plese-Graham, LLC v. Loshbaugh*, 269 P.3d 1038,

17   1047-48 (Wash. Ct. App. 2011).

18        Under this standard, summary judgment is improper.  Slam Brands argues that

19   there is no evidence to support Superwood's contention that the Slam Brands corporate

20   entity was disregarded.  This is largely correct, and Superwood appears to concede that it

21   cannot proceed under that theory of corporate veil-piercing.  (*See* Superwood Resp. at 21-

22   22.)  However, Superwood argues that Mr. Lemelson intentionally used the Slam Brands

ORDER- 22

1    corporate entity to violate or evade the debt it owed to Superwood. (*Id.*) To succeed

2    under the "duty owed" theory, Superwood must show abuse of the corporate form,

3    typically in the form of fraud, misrepresentation, or some form of manipulation to the

4    shareholder's benefit and the creditor's detriment. *Plese-Graham*, 269 P.3d at 1047-48.

5    The court concludes that a reasonable fact finder, presented with the evidence now before

6    the court, could easily conclude that Mr. Lemelson's decision to sell Slam Brands to a

7    competitor, disburse funds to himself, and accept a job working for his competitor, was

8    an attempt to evade the duty Slam Brands owed to Superwood. On summary judgment,

9    the court is "required to view the facts and draw reasonable inferences in the light most

10   favorable to the [non-moving] party." *Scott*, 550 U.S. at 378. Indeed, regardless of Mr.

11   Lemelson's intent, the undisputed facts and evidence suggest that this may have been the

12   net effect of Mr. Lemelson's transaction with Whalen. If Slam Brands was left without

13   substantial assets, as it was, a breach of contract judgment against it would be useless to

14   Superwood, which would be left with more than two million dollars in invoices and no

15   one to answer for them.

16         The court has thoroughly reviewed the evidence before it and concludes that there

17   is a genuine dispute of material fact regarding Superwood's claim for personal liability.

18   Obviously, the court expresses no opinion about whether Mr. Lemelson should ultimately

19   be held personally liable. However, the evidence before the court, when viewed in the

20   light most favorable to Superwood, is insufficient to support summary judgment

21   dismissal at this time. Accordingly, the court DENIES Slam Brands' motion with respect

22   to this claim.

1          5.  <u>Superwood's Uniform Fraudulent Transfer Act Claim</u>

2          Last, Slam Brands moves for summary judgment dismissal of Superwood's claim

3   under the Uniform Fraudulent Transfer Act ("UFTA").  (Slam Brands MSJ at 24-26.)

4   Superwood alleges that "Lemelson transferred [Slam Brands'] assets to Whalen with the

5   actual intent to hinder, delay and defraud Superwood . . . ," and that "[t]he transfers of

6   [Slam Brands'] assets to Lemelson were fraudulent as to Superwood and . . . should be

7   disregarded and set aside by this Court."  (Compl. ¶¶ 7.2-7.3.)  Again, Slam Brands

8   argues that Superwood has not presented enough evidence to support its claim, and again

9   the court disagrees and DENIES the motion.

10         Under Washington's version of the UFTA, a transfer of assets may be declared

11  fraudulent and set aside if either (1) it is made "[w]ith actual intent to hinder, delay, or

12  defraud any creditor of the debtor," or (2) it is made without receiving a reasonable

13  equivalent value in exchange for the transfer.  RCW 19.40.041(a)(1)-(2).  The UFTA sets

14  forth eleven factors for a fact finder to consider in deciding whether a transfer was made

15  with actual intent to hinder, delay, or defraud a creditor, including whether:  (1) the

16  transfer or obligation was to an insider; (2) the debtor retained possession or control of

17  the property transferred after the transfer; (3) the transfer or obligation was disclosed or

18  concealed; (4) before the transfer was made or the obligation incurred, the debtor had

19  been sued or threatened with suit; (5) the transfer was of substantially all of the debtor's

20  assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value

21  of the consideration received by the debtor was reasonably equivalent to the value of the

22  asset transferred; (9) the debtor was insolvent or became insolvent shortly after the

1    transfer was made; (10) the transfer occurred shortly before or shortly after a substantial

2    debt was incurred; and (11) the debtor transferred the essential assets of the business to a

3    lienor who transferred the assets to an insider of the debtor.  RCW 19.40.041(b).

4            Given these factors, summary judgment is inappropriate.  Superwood has

5    presented enough evidence with respect to five of these factors to create a genuine issue

6    of material fact precluding summary judgment on its UFTA claim.  Superwood has

7    presented evidence (or else there are undisputed facts) demonstrating that factors (1), (2),

8    (4), (5), and (9) favor finding the transfer fraudulent.  First, Mr. Lemelson was

9    undoubtedly an insider with respect to Slam Brands.  *See* RCW 19.40.011(7)(ii).  Second,

10   Slam Brands still had control over the assets after the transfer because they belonged to

11   Mr. Lemelson, who was president and sole shareholder of Slam Brands.  Third, Mr.

12   Lemelson knew before the transfer that Superwood was demanding payment.  Fourth, the

13   sale to Whalen and subsequent liquidation of assets to Mr. Lemelson expended nearly all

14   of Slam Brands' assets.  Finally, Slam Brands ceased operations and was no longer a

15   going concern after the transfer.  On summary judgment, the court is "required to view

16   the facts and draw reasonable inferences in the light most favorable to the [non-moving]

17   party."  *Scott*, 550 U.S. at 378.  The court concludes that a reasonable fact finder, faced

18   with the evidence now before the court, could conclude that the transfer of funds to Mr.

19   Lemelson was made "[w]ith actual intent to hinder, delay, or defraud" Superwood.  *See*

20   RCW 40.041(a)(1)-(2).  Accordingly, Slam Brands' motion for summary judgment

21   dismissal of this claim is DENIED.

22

1

**III.    CONCLUSION**

2

        For the foregoing reasons, and as explained above, the court GRANTS IN PART

3

and DENIES IN PART the parties' motions for summary judgment.

4

        Dated this 15th day of August, 2013.

5

6

7

JAMES L. ROBART
United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 26